**Brian Keith HUGEN, Petitioner**

v.

**The PEOPLE of The State of Colorado, Respondent.**

**No. 08PDJ036.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Dec. 17, 2008.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2008.

## OPINION AND ORDER OF RE-ADMISSION PURSUANT TO C.R.C.P. 251.29

### I. *ISSUE*

An attorney seeking readmission to the practice of law must demonstrate fitness to practice, professional competence, rehabilitation, and full compliance with all applicable disciplinary orders by clear and convincing evidence. Petitioner demonstrated professional competence and a substantial change in his professional and personal character within his community. He also substantially complied with applicable disciplinary orders, accepted responsibility for past misconduct, and appeared genuinely remorseful. Should the Hearing Board readmit Petitioner to the practice of law?

***DECISION OF THE HEARING BOARD: ATTORNEY READMITTED TO THE PRACTICE OF LAW.***

### II. *PROCEDURAL HISTORY*

On April 7, 2008, Petitioner filed a "Verified Petition for Readmission." The People filed "Respondent's Answer to Petitioner's Verified Petition for Readmission" on April 24, 2008. The People agreed to the technical sufficiency of the petition, but took no position regarding Petitioner's readmission pending an investigation concerning his qualifications for readmission.

At the commencement of the Readmission Hearing, the People stipulated to Petitioner's professional competence, but disputed his full compliance with all applicable disciplinary orders and took no position as to his rehabilita-

tion and fitness to practice law. However, upon the conclusion of the Readmission Hearing, the People stated that they would not object to Petitioner's readmission to the practice of law, with certain conditions.

## III. FINDINGS OF FACT

The Hearing Board finds the following facts by clear and convincing evidence. The parties submitted "Petitioner's and Respondent's Stipulated Facts" and several joint exhibits, which have been incorporated into the findings below.

### Stipulated Facts

Petitioner was licensed to practice law in the State of Colorado in 1986. On February 3, 1997, the Colorado Supreme Court immediately suspended him from the practice of law during the pendency of disciplinary proceedings. The Colorado Supreme Court disbarred Petitioner on February 16, 1999. Accordingly, at least eight years have passed since the Colorado Supreme Court disbarred Petitioner.[1]

Petitioner successfully passed the February 2007 Colorado Bar Examination. He also successfully passed the August 2007 Multi-state Professional Responsibility Examination. The parties therefore stipulated that Petitioner is competent to practice law. Petitioner also made restitution to the parties affected by his misconduct, paid the costs of the disbarment proceedings, and has not had any discipline entered against him since the order of disbarment.

### Petitioner's Disbarment [2]

Petitioner entered into a stipulation, agreement and conditional admission of misconduct with the People, and the Colorado Supreme Court accepted it on February 16, 1999. In the stipulation, Petitioner agreed that he knowingly misappropriated funds of various clients without their knowledge or consent, falsified bank records supplied to the People, continued to practice law while under suspension without informing his law partner, his clients, opposing parties, or the court, and failed to keep a client informed about the status of her case and neglected the case.

The Colorado Supreme Court relied on its own case law and ABA *Standard* 4.11 and disbarred Petitioner from the practice of law. They also ordered him to pay costs in the amount of $2,683.25 within thirty days. Petitioner paid these costs on or about April 18, 2008.[3]

### Testimony of Petitioner

Petitioner was born in Harvey, Illinois in 1960 and grew up in a "well-rounded family." He graduated from Calvin College with a Bachelor of Arts degree in 1983 and thereafter attended the Indiana University School of Law. Petitioner worked for a law firm, a federal magistrate, and a public defender's office during law school, but still performed well and graduated with honors in 1986. Petitioner passed the Colorado Bar Examination in 1986 and began practicing as an associate attorney with a general practice law firm in Denver.

In 1990, Petitioner entered into a law partnership with Stephen Caplin, a former employer from his law school days. Mr. Caplin remained in Indianapolis, Indiana, while Petitioner managed a new law office in Colorado. Petitioner was in his early thirties at the time and without any prior law office management experience. He began with one secretary/paralegal and within a few years had a 5000 square foot office with five employees.

In 1996, Petitioner began experiencing serious cash flow problems, which affected his ability to pay his staff, lease, and other overhead expenses. He asked Mr. Caplin for assistance, but Mr. Caplin informed Petitioner that he needed to be self-sufficient. At this point, Petitioner admittedly "crossed the line" and began using client funds to pay his

---

1. *See* C.R.C.P. 251.29(a) ("A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment.").

2. *See In re Hugen,* 973 P.2d 1267 (Colo.1999).

3. *See* Exhibit 12, "Petitioner's and Respondent's Stipulated Facts" at ¶ 11.

expenses. He would replenish the funds after settling cases, but the situation eventually "snowballed" and resulted in the misappropriation of funds belonging to several clients. During this time, Petitioner kept his actions hidden from Mr. Caplin, his wife, his family, and his friends. He felt a great deal of stress and guilt for his actions.

In 1996, Allstate Insurance filed a Request for Investigation with the People. In response to a subpoena from the People, Petitioner added, "insult to injury" by sending the People fraudulent bank statements. He later admitted his actions and produced the proper records.

The Colorado Supreme Court immediately suspended Petitioner from the practice of law on February 3, 1997. Nevertheless, Petitioner continued to practice law for several weeks with the hopes of settling a large personal injury claim, which would allow him to replenish his COLTAF account. He failed to tell anyone about his immediate suspension.

Mr. Caplin became aware of the immediate suspension in May 1997 and immediately locked Petitioner out of the law office and began informing clients, opposing counsel, and the courts of the situation. Petitioner then decided to meet with the People and fully disclose all of the facts and documents demonstrating the extent of his misconduct. He fully cooperated with the People from this point forward. Petitioner contacted his clients, informed them of his suspension, and assisted them in obtaining new counsel. With assistance from the People, Petitioner also established a fund that would distribute all funds generated from legal work performed before his suspension to his clients. The creation of this fund resulted in full restitution for all of his clients.

Petitioner entered into a stipulation with the People in late 1998. As stated above, the Colorado Supreme Court approved the stipulation and disbarred Petitioner from the practice of law on February 16, 1999.

Petitioner later met with the Arapahoe County District Attorney's office without precondition and confessed to his misconduct against the advice of counsel. In January 2000, he pled guilty to felony theft (F3) and the court sentenced him to six years in the Department of Corrections. Petitioner served ten months before a sentencing court granted his motion for reconsideration and sentenced him to Community Corrections for six years without parole. He began in a halfway house and worked for a Discount Tire shop until he transferred to non-residential intensive probation in March 2001. He earned the maximum amount of "good time" and completed his sentence in 2004.

Petitioner's actions seriously affected his family. He was unemployed for an extended period of time and the family struggled financially. Petitioner finally found a job working in automobile sales, but he lost this job after pleading guilty to a felony. His wife divorced him in 2001, but he re-married in 2003. Petitioner experienced significant depression and anxiety during this time and received only limited counseling from his father, a pastor, and briefly from a counselor in 2001.

Petitioner admittedly failed to properly wind-up his legal matters at the time the Colorado Supreme Court disbarred him. However, Petitioner had no clients or court matters in 1999, because he had not been practicing law for nearly two years.

In its disbarment order, the Colorado Supreme Court ordered Petitioner to pay costs in the amount of $2,683.25. Petitioner signed a payment plan in 1999 to pay $400.00 per month towards the costs. Petitioner failed to pay these costs until the People advised him that they remained outstanding after he filed his petition for readmission. Petitioner thereafter paid the outstanding costs in April 2008.

In March 2001, Petitioner began working for Advanced Professional Services ("APS"). APS provided billing services for 80–85 healthcare providers. Petitioner became responsible for disputed insurance claims for general medical, workers' compensation, and automobile claims. In 2003, Petitioner became an independent contractor for 15–20 doctor offices and when the "no-fault" law "sunsetted" on July 1, 2003, it became more of a lien-based practice.

Petitioner works with attorneys to confirm balances owed, provide records, and negotiate settlements on behalf of the medical professionals he represents. The medical professionals have given him full authority to settle matters, despite their knowledge of Petitioner's past felony conduct. This includes the authority to seek equitable distributions that benefit the patient. Petitioner annually collects checks totaling $2–3 million; he makes deposits, and provides monthly statements to the medical professionals.

In 2007, Petitioner began working as a paralegal for the law firm of Bell & Wright, a general practice law firm. He drafts letters to opposing counsel and clients and performs legal research. If readmitted to the practice of law, Petitioner may work part-time as an associate or "of counsel" with the firm. Petitioner would like to be able to provide legal assistance for the doctors when they have simple interpleader matters, or to his family and/or friends when they ask him for help. He does not intend to practice as a solo practitioner.

Petitioner has also created a limited liability corporation with Joseph Ramos, M.D., to fund medical services for injured persons in return for a portion of the injured clients' recovery from parties responsible for the injury. This "funding company" is in its early stages, but Petitioner assured the Hearing Board that Dr. Ramos would supply personal funds to the company in the event they became necessary.

As stated above, Petitioner successfully passed the February 2007 Colorado Bar Examination and successfully passed the August 2007 Multi-state Professional Responsibility Examination. He has also attended several Continuing Legal Education courses without receiving credit, followed developments in various legal publications, and completed the mandatory course on professionalism.[4]

With regard to rehabilitation, Petitioner noted that he has not engaged in any disciplinary or criminal misconduct since the date of his disbarment. He repeatedly apologized and fully accepted responsibility for his misconduct. Petitioner expressed deep remorse for his conduct and acknowledged that he harmed his clients, his family, the legal profession, the courts, and the citizens of Colorado. Petitioner has since engaged in various acts of community service by serving as a parent counselor, volunteering with his church and providing personal services to those in need.

Petitioner is presently struggling with his finances. He provides the sole source of income for his family and is currently behind on his home and automobile payments. A significant tax lien has also been entered against Petitioner, most of which came from the same time period as his misconduct. He has paid $200.00 per month toward the tax lien since November 2007. Nevertheless, Petitioner believes that he is in a much better position to handle any financial emergency in an appropriate manner.

### Testimony of Robert Bell

Robert Bell is an attorney who has been licensed in Nevada since 1980 and in Colorado since 1993. He practices in the areas of personal injury, family law, criminal defense, and business law. Mr. Bell also serves as a municipal judge and as an administrative judge.

Petitioner began working part-time as a paralegal for Mr. Bell over two years ago. He advised Mr. Bell about his past misconduct when Mr. Bell hired him. Petitioner performs legal research, prepares documents, and organizes discovery for Mr. Bell. Mr. Bell stated that Petitioner has an excellent knowledge of the law, provides excellent work, and that he would love to offer Petitioner an associate position in the event the Hearing Board readmits Petitioner to the practice of law. Mr. Bell therefore recommended that the Hearing Board readmit Petitioner to the practice of law.

### Testimony of Ronald Wilcox

Ronald Wilcox is an attorney who has been licensed attorney in Colorado since 1983. He practices in the areas of water law and complex commercial litigation.

---

4. *See* Exhibit 13.

Mr. Wilcox met Petitioner in a complicated interpleader action in 2006. He had numerous conversations with Petitioner during the case and found him to be knowledgeable as well as open and honest about his past misconduct. Mr. Wilcox would trust Petitioner with his own funds and would hire Petitioner if they practiced in the same area of the law. Mr. Wilcox therefore recommended that the Hearing Board readmit Petitioner to the practice of law.

### Testimony of Steven Kaufman

Steven Kaufman is an attorney who has been licensed in Colorado since 1980. He practices in the areas of plaintiffs' personal injury litigation.

Mr. Kaufman met Petitioner in 1986 when Petitioner applied for a law clerk position, and later worked as an associate with his firm. He recalled that Petitioner demonstrated an excellent knowledge of the law and provided excellent work product. Mr. Kaufman stated that he would entrust Petitioner with his own funds and that he would hire Petitioner back, because he believes that although Petitioner took the wrong path, he tried to make things right in the end. Mr. Kaufman therefore recommended that the Hearing Board readmit Petitioner to the practice of law.

### Testimony of Joseph Ramos, M.D.

Joseph Ramos is a medical doctor specializing in internal medicine and professor of surgery for the University of Colorado Health Sciences Center who has been licensed since 1997. He is board certified in emergency medicine. Dr. Ramos also graduated from law school in May 2008, and was awaiting his results from the Colorado Bar Examination at the time of the Readmission Hearing.

Dr. Ramos began working with Petitioner in 2003 after his office contracted with Petitioner to perform billing services. Shortly after his office contracted with Petitioner, Dr. Ramos became aware of Petitioner's past conduct. Nevertheless, Petitioner handled all of the billing and collection for Dr. Ramos' practice and maintained full authority to settle cases. Dr. Ramos described Petitioner as "frugal" and extremely organized when it comes to managing overhead costs.

Dr. Ramos implemented a "triple-check" system to monitor Petitioner's handling of funds. In fact, unknown to Petitioner, Dr. Ramos checked on him as recently as a week before the Readmission Hearing. The "triple-check" system has never revealed any impropriety on the part of Petitioner. Dr. Ramos testified that he has absolute confidence in Petitioner's trustworthiness.

Dr. Ramos and Petitioner also created a limited liability corporation called "Medlaw" related to funding medical services. This "funding company" is in its early stages with low overhead, but it is self-funded and current in its obligations. Dr. Ramos and Petitioner provide the labor themselves, though they anticipate hiring an employee in the event the Hearing Board readmits Petitioner to the practice of law.

Dr. Ramos has absolute confidence in Petitioner's beliefs, values, and rehabilitation going forward. Dr. Ramos therefore recommends that the Hearing Board readmit Petitioner to the practice of law.

## IV. *LEGAL ANALYSIS*

C.R.C.P. 251.29 governs the readmission of an attorney to the practice of law following disbarment.[5] Under C.R.C.P. 251.29(a), Petitioner must demonstrate by clear and convincing evidence that he: (1) is rehabilitated; (2) is fit to practice law; (3) is professionally competent; and (4) has complied with all applicable disciplinary orders and relevant rules.

### Rehabilitation

*People v. Klein,* 756 P.2d 1013, 1016 (Colo. 1988) interprets the language of the prior rule governing readmission to the bar, C.R.C.P. 241.22, and sets forth criteria for a hearing board to consider in evaluating whether an attorney has been rehabilitated from his or her past conduct. *Klein* consid-

---

5. A disbarred attorney may not apply for readmission until at least eight years after the effective date of the order of disbarment. C.R.C.P. 251.29(a).

ers the following factors (but a hearing board is not limited to only these factors):

- Character;
- Conduct since the imposition of the original discipline;
- Professional competence;
- Candor and sincerity;
- Recommendations of other witnesses;
- Present business pursuits of the petitioner;
- Personal and community service aspects of the Petitioner's life; and
- Recognition of the seriousness of his or her previous misconduct.

The Hearing Board finds that Petitioner has experienced a sustained change in his character since the time of his disbarment. He has acted responsibly in his personal and professional life, and become a reliable, honest and trustworthy employee and business partner. Petitioner maintained his professional competence during his disbarment and also became an active member of his community. He recognized the gravity of his past misconduct and was candid, sincere, and remorseful in these proceedings.

In addition to his own testimony, Petitioner presented four witnesses who addressed several of these factors and unanimously recommended that the Hearing Board readmit him to the practice of law. These witnesses confirmed the efforts Petitioner has undertaken to demonstrate his rehabilitation.

Petitioner has demonstrated a substantial change of character from the conduct that led to his disbarment. He has also developed significant skills that should help him avoid similar misconduct in the future. The Hearing Board therefore finds clear and convincing evidence that Petitioner is rehabilitated and fit to practice law.

### Fitness to Practice

In the opinion disbarring Petitioner, the Colorado Supreme Court stated, "If Hugen applies for readmission pursuant to C.R.C.P. 251.29, his compliance with all orders related

---

6. *See In re Hugen*, 973 P.2d 1267, 1271 (Colo. 1999).

to the criminal proceeding arising from his misconduct and his making of complete restitution to the parties affected by that misconduct shall be major factors in determining whether he is once again fit to practice law." [6]

The People stipulated that Petitioner made restitution and the Hearing Board finds clear and convincing evidence that he took extraordinary efforts to ensure his clients received it in a timely manner. With regard to orders related to the criminal proceeding, the only evidence presented is that Petitioner earned the maximum amount of "good time" during his sentence.

### Professional Competence

The parties stipulated that Petitioner successfully passed the February 2007 Colorado Bar Examination, and the August 2007 Multi-state Professional Responsibility Examination. The Hearing Board also finds that Petitioner has attended several Continuing Legal Education courses without receiving credit, followed developments in various legal publications, and completed the mandatory course on professionalism.

The testimony of Petitioner and Robert Bell demonstrated that Petitioner has been working as a part-time paralegal for Mr. Bell for the past two years. This experience, as well as his current employment, has afforded Petitioner the opportunity to maintain his knowledge of relevant case law and new statutes during his disbarment. The parties stipulated to Petitioner's competence and the Hearing Board finds clear and convincing evidence that Petitioner is competent to practice law.

### Compliance with All Applicable Disciplinary Orders and Rules

C.R.C.P. 251.28 sets forth specific notice requirements a suspended or disbarred attorney must follow upon the effective date of such an order.[7] Proof of compliance with C.R.C.P. 251.28(g) is a condition precedent to

---

7. The Hearing Board notes that C.R.C.P. 241.21 was the rule in effect at the time of Petitioner's immediate suspension from the practice of law.

any petition for readmission to the practice of law.

Petitioner failed to notify clients or opposing counsel of his disbarment. He stated that he had no pending matters or clients at the time. However, Petitioner had pending clients at the time of his order of immediate suspension and should have complied with C.R.C.P. 241.21 at that time.

The People did not object to the Readmission Hearing going forward based upon Petitioner's noncompliance with C.R.C.P. 251.28 and 241.21. They also did not object to Petitioner's readmission to the practice of law based on this noncompliance.

In its disbarment order, the Colorado Supreme Court ordered Petitioner to pay the costs in the amount of $2,683.25 within thirty days. Petitioner signed a payment plan in 1999 to pay $400.00 per month towards the costs and thereafter mistakenly believed the costs had been paid. Petitioner paid the costs on or about April 18, 2008.

Although he initially failed to fully comply with all disciplinary orders and rules, the Hearing Board finds clear and convincing evidence that Petitioner has since substantially complied with them.

## V.  *CONCLUSION*

■ The purpose of attorney disciplinary proceedings is to protect the public and the administration of justice from attorneys who fail to uphold their professional duties to clients, the public, the legal system, and the legal profession.[8] Petitioner failed to uphold these duties and the Colorado Supreme Court disbarred him.

In the nine years since his disbarment, Petitioner has become a law-abiding, honest, hardworking, and trustworthy individual. He has earned the respect and trust of his employers for whom he is responsible for handling millions of dollars and accounting for these funds. Petitioner has maintained his professional competence and become an active member of his community. He is remorseful for his past conduct and his actions

to rehabilitate himself provide the Hearing Board with evidence that he will not engage in such conduct again.

In their closing argument, the People did not object to Petitioner's readmission to the practice of law with certain conditions. Petitioner stated that he did not object to any of the conditions set forth by the People. The Hearing Board may condition readmission upon compliance with any additional orders and finds several of these conditions appropriate in light of his current financial situation to ensure his continued success.[9]

In this case, Petitioner provided clear and convincing evidence that he is rehabilitated, fit to practice law, professionally competent, and substantially compliant with all applicable disciplinary orders and relevant rules. The Hearing Board believes that Petitioner will uphold his professional duties to clients, the public, the legal system, and the legal profession in the future. Accordingly, the Hearing Board concludes that Petitioner should be readmitted to the practice of law with conditions.

## VI.  *ORDER*

1. The Hearing Board **GRANTS** the "Verified Petition for Readmission" filed by Petitioner on April 7, 2008. Petitioner **SHALL** contact the Office of Attorney Registration within twenty (20) days of the date of this order and comply with all necessary conditions of readmission required of a "newly admitted attorney" which include the payment of registration fees, completion of requisite paperwork, obtaining a new attorney registration number, and appearing before the PDJ to take the oath of admission. The PDJ will issue an "Order and Notice of Readmission Pursuant to C.R.C.P. 251.29(a)" upon Petitioner's successful compliance with the above conditions.

2. Petitioner **SHALL** submit to and pay for a practice monitor acceptable to the People who shall quarterly monitor Petitioner's practice and trust accounts

---

**8.**  *See* ABA *Standard* 1.1.

**9.**  *See* C.R.C.P. 251.29(e).

for eighteen (18) months from the date of this order.

3. Petitioner **SHALL** attend and successfully pass the one-day ethics school sponsored by the People within one year of the date of this order. Petitioner shall register and pay the costs of ethics school within thirty (30) days of the date of this order.

4. Petitioner **SHALL** attend and successfully pass the one-half-day Trust Account School sponsored by the Office of Attorney Regulation Counsel within one year of the date of this order, and pay all costs associated therewith. Petitioner shall register for and pay the costs of Trust Account School within thirty (30) days of the date of this order.

5. Petitioner **SHALL** pay the costs of these proceedings. The People **SHALL** submit a Statement of Costs within fifteen days of the date of this order. Petitioner **SHALL** have ten days to file a response.